# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| DAWN GRIEVES<br>3111 Highland Park Drive<br>Pickerington, OH 43147<br>    Plaintiff<br><br>        v.<br><br>NEBRASKA BEEF, LTD.<br>4501 S. 36th Street<br>Omaha, Nebraska 68017<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 08-665<br><br>(Jury Demand) |

## COMPLAINT

Now comes the plaintiff Dawn Grieves by and through her attorneys of record, asserting claims against the defendant, Nebraska Beef Ltd., and states and alleges as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.1     The plaintiff Dawn Grieves is a citizen of Fairfield County, Ohio.

1.2     The defendant Nebraska Beef, Ltd. is corporation incorporated under the laws of the State of Nebraska, with its principal place of business in Nebraska.

1.3     The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 USC §1332.

1.4     Venue in the Southern District of Ohio is proper pursuant to 28 USC §1391(a)(2) because a substantial portion of the events giving rise to the plaintiff's claims occurred here, and because the defendant was subject to personal jurisdiction in this district at the time this action was commenced.

1.5     The causes of action stated in this Complaint arose as a result of defendant's transacting business in the State of Ohio.

1.6     The causes of action stated in this Complaint arose as a result of tortious injuries suffered by the Plaintiff caused by acts and omissions of the defendant.

1.7     The causes of action stated in this Complaint further arose as a result of breaches by the defendants of implied warranties made by the defendant in the sale of goods which the defendant might reasonably have expected to be used or consumed in the State of Ohio.

1.8     The defendant regularly does or solicits business in the State of Ohio and/or derives substantial revenue from goods used or consumed in the State of Ohio.

## II. GENERAL ALLEGATIONS

<u>The Outbreak</u>

2.1.1.  On or about June 24, 2008, the Michigan Department of Community Health announced that at least fifteen Michigan residents had been infected with *E. coli* O157:H7 after consuming ground beef, later determined to have been manufactured by Nebraska Beef, Ltd.

2.1.2   On or about June 25, 2008, the day after Michigan's announcement, the Ohio Department of Health linked, through genetic testing, the *E. coli* O157:H7 illnesses of nineteen Ohio residents to the Michigan cases.  These cases had also been exposed to ground beef manufactured by Nebraska Beef, Ltd.

2.1.3   The same day as Ohio's announcement, June 25, 2008, the U.S. Department of Agriculture's Food Safety and Inspection Service announced the recall of all varieties and weights of ground beef products bearing a Kroger label that had been sold between May 21 and June 8.

2.1.4.  On June 26, 2008, Ohio health officials confirmed that a Nebraska Beef, Ltd. sample of ground beef from a Kroger store in the central Ohio city of Gahanna had tested positive for the same strain of *E. coli* O157:H7 as had been isolated from the Ohio and Michigan cases.

2.1.5.  On June 30, 2008, the U.S. Department of Agriculture's Food Safety and Inspection Service confirmed, through traceback investigations and testing of ground beef samples collected from two Nebraska Beef, Ltd. plants, as well as multiple samples of Nebraska Beef, Ltd. ground beef that had been purchased at Michigan and Ohio Kroger stores, that Nebraska Beef, Ltd. was the manufacturer of the *E. coli* O157:H7 tainted ground beef associated with the Kroger recall.

2.1.6   On June 30, 2008, Nebraska Beef, Ltd. recalled 531,707 pounds of its "ground beef components" due to possible contamination with *E. coli* O157:H7.  Nebraska Beef, Ltd. later expanded its recall to include 5.3 million pounds of its ground beef product.

Dawn Grieves's illness

2.2.1  Dawn Grieves consumed ground beef contaminated with *E. coli* O157:H7 manufactured by Nebraska Beef, Ltd. on at least one occasion in the first several days of June, 2008.

2.2.2  On or about June 5, 2008, Ms. Grieves began to feel nauseated and generally unwell.  The next day, she developed increasingly severe gastrointestinal symptoms, including worsening nausea, vomiting, diarrhea, and abdominal cramps.

2.2.3  On June 6, 2008, Ms. Grieves deteriorating condition required that she go to the emergency room at Mount Carmel East Hospital in Columbus, Ohio.  A CT scan was performed to rule out appendicitis, and a stool sample was taken to determine whether Ms. Grieves had been infected with a harmful bacteria.  Ms. Grieves was sent home with antibiotics and pain medication.

2.2.4  Ms. Grieves's condition did not improve over the next several days.  On June 9, 2008, she was informed over the phone that her stool sample had tested positive for *E. coli* O157:H7, and was told to return to the hospital.

2.2.5  Ms. Grieves was admitted to Mount Carmel East Hospital on June 9, 2008.  While hospitalized, she suffered excruciating pain related to her *E. coli* O157:H7 infection.  She remained hospitalized until June 13, 2008.

2.2.6  Shortly after Ms. Grieves's discharge from the hospital, the Fairfield County Health Department informed her that the genetic fingerprint from the *E. coli* O157:H7 bacteria in her stool sample matched the strain of *E. coli* O157:H7 bacteria found in the Nebraska Beef, Ltd. outbreak.

2.2.7  Ms. Grieves continues to recover from the effects of her *E. coli* O157:H7 infection.

### III. CAUSES OF ACTION

#### COUNT I - Strict Liability

3.1     At all times relevant to this action and the allegations herein, the defendant was a manufacturer, within the meaning of the Ohio Product Liability Act, Ohio Revised Code §2307.71 *et seq.* ("Act"), of the ground beef that caused the plaintiff's *E. coli* O157:H7 infection. The ground beef that caused plaintiff's *E. coli* O157:H7 infection was a product within the meaning of the Act, ORC §2307.71 (A)(12)(a).

3.2     The product that caused plaintiff's illness and injuries was, at the time that it left the defendant's control, defective within the meaning of the Act, ORC §2307.73 (A)(1), and unreasonably dangerous for its ordinary and expected use, because it contained *E. coli* O157:H7, a deadly pathogen.

3.3     The product that caused plaintiff's illness and injuries was delivered to the plaintiff without any change in its defective condition, and she used the product in the manner expected and intended by consuming it.

3.4     The plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that was manufactured, distributed, and sold by the defendant.

#### COUNT II - Breach of Warranty

3.5     The defendant is subject to liability to the plaintiff for breach of express and implied warranties made to the plaintiff with respect to the product she consumed, including the implied warranties of merchantability and fitness for a particular use.  Specifically, the defendant

expressly warranted, through its sale of food to the public, and by the statements and conduct of its employees and agents, that the food that it manufactured and sold was fit for human consumption, and not otherwise adulterated or injurious to health.

3.6     Plaintiff alleges that the food she consumed, which was contaminated with *E. coli* O157:H7, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

3.7     Plaintiff alleges that the food she consumed was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

3.8     As a direct and proximate cause of the Defendant's breach of warranty, as set forth above, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## COUNT III - Negligence

3.9     The defendant owed a duty to the plaintiff to use reasonable care in the manufacture of its food products, and to prevent or eliminate the risk that its food products would be contaminated with *E. coli* O157:H7, or any other similarly deadly pathogen. The defendant breached this duty.

3.10    The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

3.11    The defendant had a duty to properly supervise, train, and monitor its employees, and to ensure that its employees complied with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so and was therefore negligent.

3.12    The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so and was therefore negligent.

3.13    As a direct and proximate result of the defendant's acts of negligence, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## COUNT IV - Negligence Per Se

3.14    The food that the defendant manufactured and sold, and that the plaintiff purchased and consumed, was adulterated within the meaning of the Pure Food and Drug Law of Ohio, ORC §3715.59(A), and the Federal Food, Drug and Cosmetics Act (21 U.S.C §301 *et seq.*), because it contained a deleterious substance that rendered it injurious to health.

3.15    The defendant violated the Pure Food and Drug Law of Ohio, ORC §3715.52(A)(1), by its manufacture and sale of adulterated food.

3.16    The Pure Food and Drug Law of Ohio establishes a positive and definite standard of care in the manufacture and sale of food, and the violation of this law constitutes negligence *per se*.

  3.17 The plaintiff was injured as the direct and proximate result of the defendant's violation of the Pure Food and Drug Law of Ohio.

  3.18 The defendant's aforesaid actions and failures to act consciously disregarded the rights and safety of the plaintiff, there being a great probability that said actions and failures to act would cause substantial harm to the plaintiff.

## IV. DAMAGES

  4.1 The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount which shall be fully proven at the time of trial.  These damages include, but are not limited to: damages for general pain and suffering; damagers for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

  THEREFORE, the plaintiff demands judgment against defendant as follows:

  A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct in an amount in excess of $350,000.00;

  B. Awarding punitive damages:

  C. Awarding plaintiff its reasonable attorneys' fees and costs, to the fullest extent allow by law; and

    D.    Granting all such additional and further relief as this Court deems just and equitable.

        s/ Nicholas E. Phillips
        Nicholas E. Phillips, Esq.
        7530 Lucerne Drive, Suite 200
        Middleburg Heights, Ohio 44130
        Tel.: (440) 243-2800
        Fax: (440) 243-2852
        Email: nphillips@pmlawyers.com
        Ohio Bar Registration No.: 0010207
        Attorney for Plaintiff

        _____
        William D. Marler, Esq.
        Marler Clark LLP, Esq.
        701 Fifth Avenue, 6600
        Seattle, WA 98104
        Tel.: (206) 346-1888
        (Application to appear *pro hac vice* pending)

## JURY DEMAND

(Civil Rule 38(B))

Plaintiff hereby demands that the issues in this case be tried by a jury.

        s/ Nicholas E. Phillips
        Nicholas E. Phillips, Esq.
        Attorney for Plaintiff